Good morning. We have four appeals that are scheduled for argument this morning. And the first is the United States of America v. Rassan Tarabein. William Bradford is here for the appellate Tarabein. Scott Gray is here for the United States. And Mr. Bradford, you may  Mr. Bradford That may please the court. I would like to take just a moment to note one thing that my client was very insistent that I note. He had filed a pro se pleading with the court, which was rejected concerning a document 106 of the district court. It contains certain evidence that was not put in a trial. And in my opinion, my professional judgment, more appropriate for a post judgment pleading. But I did commit to him that I would mention the document. And unless the court has some question about that, I'll proceed to argue the issues that were actually in the brief. And I'd like to focus on, in my time, on two counts. Counts one and count five. And do that in reverse order. The argument on count five begins with the argument that the motion dismissed count five at the beginning of the case as a pretrial matter. Count five should have been dismissed because the indictment did not sufficiently meet the requirements of rule seven in providing enough information to put Mr. Tarabein on notice of what he was charged with. And this is the aggravated identity theft count, is that right? That is correct. So what exactly did he not know through the indictment? The indictment, and the problem we see is with the predicate offense. The indictment did set out the elements of aggravated identity theft. But part of that, one of the elements is the predicate offense of bank fraud. And what the indictment said was just that it was during the commission of a bank fraud in violation of 18 U.S.C. 1344. But it did not set out the elements of bank fraud. It did not set out the intent necessary for bank fraud. And it did not set out any factual content whatsoever with bank fraud we were dealing with in count five. As a trial practitioner, I think immediately if I read the indictment, my mind is going to go to other counts in the indictment to see if I can find the predicate offense. I think that's pretty natural. Although it doesn't have to be charged. Well, did he have done any business with DNS Supply Company? No, sir. Seems pretty, I mean, he didn't do any business with them and that was a check payable to him from DNS Supply Company to Citizens Bank. Seems pretty straightforward. Your Honor, he had received that check through some communication over the internet from who we believe to be the actual people running this scam on DNJ. I think it's notable that he received that check on March 8th in the morning in a UPS package. As far as we can tell from the evidence unsolicited, he reported that to his probation officer later that day along with the letter offering him some type of employment through a Chinese company. The probation officer told him, not a good idea, we can't approve that. He informed the probation officer that I'm not going to do anything with that. I think our problem is that there's no other evidence connecting him whatsoever with the underlying fraud that was being perpetrated on DNJ. There was evidence presented at trial that DNJ had been burned once before with a counterfeit check. But there wasn't any connection to Mr. Tirabian. There wasn't any connection to anyone in Alabama. It was a check that was negotiated in Michigan, I believe. His only connection to it is the mere possession of that check which he obtained through an unsolicited email from, I guess, parts unknown, although it purports to be from a Chinese company. If the evidence is insufficient to show bank fraud, certainly it's sufficient to show an attempt to commit a bank fraud which would violate the statute, wouldn't it? Judge, I think the mere possession of that check should not be enough. There has to be a knowing intent to defraud. And there was no action taken by him with the check other than to notify his probation officer. There doesn't appear to be any connection with the prior check that was negotiated in Memphis. The young lady from DNJ testified that she did not know Mr. Tirabian, didn't have any clients in Alabama down on the coast. And there wasn't any evidence that he associated with anyone who took the check, counterfeited the check, mailed the check to him, UPS, or had any communication other than the letter that was seized along with the check in his luggage. So I think that it's a matter of can we speculate that he had something to do with the underlying bank fraud being perpetrated on DNJ? You can speculate. But there's not anything that rises to the level of proof of the reasonable doubt that he was even involved other than the possession. And I think that's... Could you go back to the indictment issue? So, I mean, you've been arguing about the sufficiency of the evidence a little bit. So it's, and I'm having a little bit difficult time understanding your argument on the indictment issue. Is it that the government, are you arguing that the government always has to allege all of the elements of the underlying offense as part of aggravated identity theft? Are you arguing that aggravated identity fraud? Are you arguing that just like on the face of this indictment, you didn't have enough information alleged to know what you're litigating against? Like, what's your argument? I think I have to limit it to this indictment. Okay. I mean, certainly you don't have to set out every fact that you're alleging. But in this case, there's nothing alleged other than just that it was a bank fraud. And I think the problem is, you know, certainly after the case gets rolling and discovery comes in, there becomes an awareness of, okay, now we understand sort of where they're headed with this. But that's the purpose of Rule 7. He should not have to wait until that point to know that. And there's just nothing in the indictment to suggest that that count, alleged bank fraud, had anything to do with the DNJ check or any... Why isn't... And so why isn't the... And I agree the indictment could have been clearer on this point. But why isn't the fact that the indictment says the signature of an individual identified herein is DS, and then DS is related to the DNJ supply check? Why isn't the express mention of DS enough? I think that's their argument. I think the problem there is the underlined predicate offense. I don't think it has to be that closely tied to the identity theft. I think that's an assumption that the DNJ signature would be involved in the bank fraud. But that's just an assumption that it wouldn't necessarily have to be. Or it would not have to be the only thing associated with it. I think it just doesn't give enough information as to why that check in his possession is connected to a bank fraud versus any other activity and exactly what bank fraud we're talking about. I think he needs to be informed more of some fact to show and to put him on notice of exactly what he's defending against. And as I read the indictment at first blush, I don't know exactly what I'm defending myself against from reading the indictment. And I think that's sort of where we argue from. The count one is the other count I'd like to address. And I think there's a count one is tied to another argument that was made, another issue about government's exhibit 66, which is the December 2021 bank statement from Wells Fargo. That becomes an issue because at the beginning of the trial, there was a stipulation as to the admission of those statements. But it was not a stipulation as to double hearsay. And that particular statement is the statement that deals with count one, which was a count that alleged that he had attempted to make a transfer to Wells Fargo from a Bank of America account that had been closed some time ago. And the statement is the evidence of that transaction where it shows it was initiated online and that Bank of America rejected that transaction and it was reversed. And I think that's why it's double hearsay. The government ultimately prevailed and the objection was overruled because the government suggested that they were going to be able to show that the document was purely a record of Wells Fargo and that they could tie, I guess, in the classic law school sense, tie it all together in the end. The problem comes in when the government cannot do that. Agent Simmons did not possess enough information to explain exactly what those notations meant or how they got there. It was represented to the district court that all the information on the statement was Wells Fargo information. The young lady from Wells Fargo said she didn't have sufficient information to speak to that. And ultimately, it rested with Catherine Scott, the former FBI forensic accountant, who speculated that, well, here's what I think. I think it goes to the Federal Reserve and the request is made and then the receiving bank says this is not an open account and it comes back. But that brings us right back around to the argument made by the defense that that's why it is double hearsay because it contains a statement from Bank of America. So, am I right that you all stipulated that records from Wells Fargo didn't need a custodian? Correct. Why isn't this a record from Wells Fargo? Because the notation from Bank of America, based on Ms. Scott's testimony, was something from Bank of America. It was something, the transaction was sent and the transaction was rejected, not by Wells Fargo, but by Bank of America. And that's why it was reversed. But just explain, I understand you're saying that there's information that came from Bank of America on the record, but why isn't the record still a record from Wells Fargo? Because the response to the transfer was not something that Wells Fargo did. Yeah, they didn't generate it. I get your point. But I mean, business records often have information from third parties. They're not, I mean, that's the way a business record works. I mean, like an insurance claim, for example. It's not the insurance company saying this is right in our records. It's the person out there who got in a car wreck that's reporting information. So, why isn't that the same thing here? Well, I think it's because that statement from Bank of America is the crux of count one. That the reason they're alleging it was bank fraud is because the Bank of America account was closed and had no money in it. Well, where did the statement come from? The statement... It came from Bank of America, but who wrote it on? It was a Wells Fargo document is the point. It was a Wells Fargo bank statement. Right. At trial, it came out, Bank of America was... No, but where did the statement come from? Did it come from the defendant? Did it come from Wells Fargo's records? It came from Wells Fargo's records. Okay, and so somebody at Wells Fargo wrote that on there. That's correct. Okay, so it's information Wells Fargo got from Bank of America. That's correct. And that person wrote it in the ordinary course of business. I mean, Wells Fargo makes entries on documents just because it's a bank statement and it has some handwritten notations on it. It doesn't make it not a business record. I wouldn't... Or even double hearsay. Maybe it might be double hearsay, but it's still a business record. I agree that it's a business record. I mean, nobody at Bank of America didn't write it on there, right? That's correct. The information came from them, but they didn't... Somebody at Wells Fargo in the regular course of their business investigated it and wrote down... They learned. I would agree, yes, ma'am. Okay, so it's a Wells Fargo document. Right, and we're not challenging the fact that it's a business record. What we're saying is that it should not have been admitted because it contained double hearsay. I'm going back to your stipulation about what you said about business records. That was broad enough to encompass that. Well, I think the district court ruled that it did not encompass that and I think that was our position at trial is that we had stipulated to the bank statements coming in as business records, but it was not a stipulation as to internal double hearsay and that's why the objection was made because it's not necessarily an issue whether it's a bank, it's a business record, but whether that business record contains hearsay that should not be admitted because it's double hearsay. All right. Thank you, Mr. Bradford. You've reserved some time for rebuttal. We'll hear from the government. Mr. Gray. Thank you and may it please the court. Scott Gray on behalf of the United States of America. Rahsaan Tarabian schemed to amass fraudulent assets and then endeavored to conceal those assets from the district court, his probation officers, his halfway house, and others until he could leave the country. His jury found him guilty on multiple criminal charges and this court should affirm Tarabian's convictions and his sentence. I will start where my opponent did with the aggravated identity theft count and I'll go first to the indictment and I think that the legal problem here for Tarabian is that as this court has said in cases like Doak and Wierski, the indictment merely needs to contain a basic statement of the legal elements of the offense. It does not, as this court put it in Doak, have to identify the path the defendant took to violate the statute. And in this court, or in this case, excuse me, the indictment readily suffices under that standard. As Judge Brasher and Judge Wilson alluded to in the indictment, it contained the means of identification at issue. And for purposes of an aggravated identity theft conviction, that is the critical point because what distinguishes aggravated identity theft from the underlying fraud is the use of that means identification at the core of the fraudulent transaction. So that is an important component, really the most important component of aggravated identity theft. Moreover, the indictment included both the statute, the aggravated identity theft statute and the predicate offense of bank fraud. That was sufficient to put the defendant on notice of the elements of the charge to be able to muster a defense and also to allege double jeopardy if he were ever charged again with respect to that use of that means of identification. As to the sufficiency... I just want to clarify what you said. So count one in the indictment is bank fraud. And you're saying that count five, when it alleges aggravated identity fraud, I forget what- Aggravated identity theft. Identity theft. That when it refers to bank fraud, it's kind of obvious it's referring to count one, which is the alleged bank fraud. No, it would be elementarily, but just to be very clear, they're different frauds. The actual- Yeah, I guess that's my point. I mean, where does it allege, how does he know what the bank fraud is underlying the aggravated identity theft count? I think it's clear from the allegation of the means of identification and from the text of the statute, because once again, the aggravated identity theft charge is a different charge than bank fraud. So for example, with the United States substantively alleged bank fraud, it provided additional details on the nature of the scheme. I will also note that it's quite possible and indeed likely that the United States allegations in count one went beyond what is legally required, but there's no case law of which I'm aware that requires that when you charge a defendant specifically with aggravated identity theft, that that aggravated identity theft count also has to include detailed factual allegations on the underlying offense, because the central driver of an aggravated identity theft offense is that use of the means of identification. Therefore, the aggravated identity theft charge focused on that means of identification. Going to the- Yeah, so here, I mean, I don't disagree with anything that you've said as a general matter, but here count one alleges a particular type of bank fraud, and then count five says you use this fake identity in the commission of bank fraud, but they're two different bank frauds, right? They are different bank frauds, but I will also note, Your Honor, there were good factual reasons to provide more information on count one. Yeah, and I'm not saying you have to, I mean, I'm just saying it just seems like if I look at the face of this indictment and I see bank fraud is charged as count one, and let's just assume the others aren't in there, then count two says aggravated identity theft in the course of committing bank fraud, and then the government comes in and says, oh, actually, you didn't use the ID in committing the bank fraud we charged you with. It was something completely separate. I get their point that there's not a lot here to understand that. And I think that I would simply respectfully submit that there was sufficient factual matter alleged in the indictment to relate to what the basis of that aggravated identity theft charge was, because as the court will recall, the count one bank fraud involved basically the submission of an online transfer to obtain in his Wells Fargo account funds from a closed and forfeited Bank of America account. That transaction was more nuanced and required some factual detail. But this case was a much more straightforward effort to possess a check that was, I think, to the tune of $31,943.30 and clearly was going to cash that check. And that once the United States alleged the means of identification that was going to be used, it was clear, number one, what the check was that was at issue and the natural and intended purpose was clear. And it certainly was clear from the evidence as the court would see at trial. And the pen side I'd give is docket entry 119 pages, I believe it's 119 to 122, that outlines both the nature of the check itself, as well as the deposit letter that was included, that when the court looks at all of that together, that readily was sufficient to put the defendant on notice of the central nature of the charge against him. And under the legal standard that this court has set out in Doak and Weiersky, that is sufficient to satisfy the purposes of this case. What is the deposit letter you're talking about from Arrington Global Investment or some other letter? Yes, Your Honor, that's correct. That's the letter to which I'm referring. That letter's not referred to in the indictment. You did put it in.  That's correct. That letter was part of the evidence at trial, I believe, in the pages I cited. But that's correct, Your Honor. It's not cited in the indictment itself. I was merely zooming out and talking about someone in... One more follow-up question. Bank fraud is just a scheme to defraud a bank. Correct. That's the elements. So that's what he's arguing. He's just saying bank fraud, the elements of bank fraud are a scheme to defraud a bank. Correct. That's all you've got to say. Correct, Your Honor. And so he's saying it didn't have anything more than bank fraud to tell us what the bank fraud was. And, Your Honor, my... There's something. And what do you say about that? My rejection to that, Your Honor, is that once the means of identification was alleged in the indictment, it was clear, understanding how basically... You keep saying means of identification. What is the means of identification that you say was alleged? It is the initials of the signatory on the D&J supply check. And there was one D&J supply check in his possession. Count 5 referred to the D&J supply check. Correct, Your Honor. And so the means of identification is the drawer signature, is that what you're saying? That's the... My recollection of the specific text of the indictment is it includes the signatory by initials. Okay. My argument from that is the initials put the defendant on notice of the signatory. The signatory makes it clear the check. And then the check, it was clear, was going to be cashed and or deposited. Therefore, that would be the bank fraud because the fraud to the financial institution... Okay, he says, I just possessed that bad check. There's nothing more I intended to do anything. You're just inferring that's what he intended to do, cash the check. Your Honor, we submit that. And so to be clear, we're shifting from the indictment here to sufficiency. That's correct. But as a sufficiency matter... Yes, because this check was made to Terrabian. It was for a vast sum, almost $32,000. And it was... And he had no business with them. We got all that.  Why would you make a fake check for $30,000 just to hold in your baggage on the trip to Syria if you didn't intend to cash it? I mean, it makes no sense. Correct. And then for sufficiency purposes, the court draws... I don't make me that worried about the sufficiency part. It's just that... How long did he have the check in his possession without cashing it? I want to say that it may have been a couple of weeks. I'm trying to remember. I think it was... I can't remember if the check was... The check may have been dated in March, and I believe he was leaving in early to mid-April, if I'm not mistaken. And he claims he called and told his probation officer that the check had just appeared in the mail. My recollection of the record, Your Honor... Somebody testified about it? My recollection is that the probation officer's testimony was slightly different. I don't remember the testimony being, he told the probation officer about this $31,943 check. My recollection was that he told his probation officer that he was thinking about taking a job with a company called Hunan Steel. And the probation officer discouraged that because it was a Chinese company, and the probation officer was concerned that his handling of potential large sums of money would be a problem, and that basically the conversation was left from the probation officer's perspective that Terrabian would not be entering this line of work. And so my recollection is that the testimony at trial was a bit more nuanced than Terrabian is suggesting. When you say testimony, whose testimony? The probation officer, Your Honor, because there were two probation officers who testified. The first probation officer who supervised him during the original stages of his initial criminal prosecution, the 2017 case, and then the second probation officer who supervised him during the time that is most relevant to the charges in this case, and that was my recollection of that second probation officer's testimony, was that he was told about the job, but I don't recall it being clear to the probation officer that Terrabian had in his possession a $32,000 check. The consistent testimony, as I recall, throughout the proceedings was that Terrabian would obfuscate and hide the pertinent funds that he had available to him. And so unless the court has further questions about the aggravated identity theft conviction and all of its attendant parts, I will switch to the count one discussion, which is the bank fraud piece. And there was certainly sufficient evidence to find the defendant guilty of bank fraud, and I think the court's questions got to the core issue with the double hearsay issue, which is this was ultimately a Wells Fargo record. I will note, as I read the stipulation, which is docket entry 84, there actually was a stipulation to both Wells Fargo and Bank of America records as business records, but regardless, I think the natural reading of this bank statement is that it was a Wells Fargo statement, and it reflected Wells Fargo's investigation into the matter, and it reflected Wells Fargo's side of the transaction. There was some discussion of the forensic accountant's testimony, and my recollection of that accountant's testimony was that she testified that there was only one side of this transaction and only could be one side because the Bank of America account had been closed and forfeited. And with that, if the court has further questions... You know, can I ask you to address the obstruction of justice enhancement? The district court didn't explain why it was imposing the obstruction of justice enhancement. The way I understand it is it had to apply to count one, which was the highest count. Could you just explain what evidence there was that he obstructed justice with respect to that bank fraud? Does that make sense? I think that's right, Your Honor, and I think that the answer I would give is that he was hiding his actions with respect to everything he was doing. I believe that there was some testimony. So at the time of the count one offense, he was on hold and confided with Keaton Corrections. And my recollection is that there were two Keaton Corrections employees who testified, and both of them indicated that he was either dishonest or not fully honest with his dealings at that time point. And he also was making the implicit misrepresentation to the bank, which was the basis for the bank fraud conviction in and of itself. So I think there were a couple of...  And so I guess you can't say we're imposing an enhancement based on the conduct underlying the count, right? I mean, so he had to do something more than commit the underlying fraud to get the enhancement. Right. And I guess that's... I'm trying to figure out what exactly that was with respect to the bank fraud. Now, maybe there's some stuff with some of these other counts where he lied to the probation or something like that. But those seem to be related to those other counts and not to the bank fraud count about having that cashier's check. My recollection, Your Honor, is in the trial record that there... Like I said, there were two employees at his halfway house who testified to his statements. And my recollection is that at least one of his visits to the bank, they denied it. I think that there were some other occasions where he may have been allowed to go, but that would be the pertinent trial testimony to his conduct during the time in question. I think that December timeframe when that check was... But is that obstruction about the collection of restitution in the Burr case, or is that obstruction somehow related to this subsequent case? That's what I'm trying to see. How did he obstruct justice with regard to this case? Not as opposed to... Which he clearly did as to the collection of restitution. Well, I think it's ultimately all in true plight because he cashed this... I keep saying he cashed this check. He deposited it. He made this online transfer while he was on home confinement, as I recall, in the other case. So he was, I hesitate to say, under supervision because that's typically the probation officer's role. But he had to go to Keeton Corrections and obtain approval and report to them about his finances because they were keeping tabs on him at that time. And there's testimony in the trial record that during that period, he wasn't fully forthcoming with them about where he was going, why he was going there, and what his assets were. Because there was testimony that he made similar statements to them about his lack of assets. You're going over your time. I just have another question. Do you know what his sentence would be if the enhancement had not been applied, the obstruction of justice enhancement had not been applied? Would it have been any different than what it was? I don't know the guidelines calculations off the top of my head, Your Honor. I do recall that the district court stated at sentencing... His 15 to 18 months would be what it would be as opposed to 18 to 24 months. And he got the high end of the guidelines. So it would probably be, if the court had the guidelines, it would be 18 months as opposed to 24 months. I'm grateful for the assist, Your Honor. I think. I would note that the district court made a statement to the effect as well when the defendant asked for a variance that it would have been imposed a sentence regardless. So therefore, you can't make a harmless error argument then? I think I could make a harmless error argument based off of the district court's statement when there was a request for a variance. The district judge did say at the end of the sentencing hearing that it would have been... Said about three times about three different things. Doesn't matter whether that applies or not. I would give the same sentence. But I don't think he said that about the obstruction. But maybe I'm wrong. Was that a keen statement? I think, Your Honor, it's one of those questions that tilts to the borderline. You know, I do believe that it was pretty clear that the district judge was going to impose the sentence. But I honestly can't understand how the court would draw a different conclusion as well. So I'm ultimately not going to rest on the keen statement here. But I did want to point out the statements. With that, I thank the court for its time. All right. Thank you, Mr. Gray. Mr. Bradford, you've reserved some time for rebuttal. Yes, Your Honor. Just very briefly. I think the issue with the bank fraud and not having enough information in the indictment is indicative of confusion that it relates to count one. Because there's just not anything there to tell me what it relates to other than the check. But in the shoes of Mr. Tarabian, I possess a check from D&J. I have no knowledge of who made the check or why the check was sent to me or any scheme of how they obtained the check or any fraud in Michigan. Did he testify to that? He did not testify to that. I didn't think he testified. You keep saying what he told the probation officer, this and this, and you keep saying all this, but there's no evidence of that. I think there was testimony that he disclosed it to the probation officer through the probation officer's electronic notes that were put into evidence. So they noted that he had contacted him about the letter and offer of employment, which was on the record. But that's not contacting him about unsolicited check and $31,000. The government just said that's not in the record, that he told the probation officer about this check. Okay. I mean, I don't know. I think the record is probably not as clear as I would like it, but I think it does show that he contacted him the morning that he received the check, and the check was sent along with that offer. Contacted him about the offer to go to work for the company that was involved here. Anything about a $31,900 check from a company he had no business with? I don't think there's anything specifically about the check. Right. I can't represent that to the court. To answer one question that was asked, he was in possession of the check from March 8th when it arrived by UPS to April 11th when it was seized at the Pensacola airport. Okay. On the obstruction of justice, to my recollection, I don't recall any evidence about obstruction in relation to count one. I know that the government's argument was that he was under supervision of Keating, which was a halfway house. There were some testimony from the Keating folks about him going to banks, leaving and having to get permission. But in this case, count one is based on an electronic transfer, so it wouldn't involve him leaving their supervision or leaving their facility. It would be something that he would have done without any interaction with them. So I don't think that that constitutes the obstruction of justice error. Let me ask you a question about that. So the district court overruled your objection to the obstruction of justice enhancement without explanation, just said overruled. I think there are a couple of different things. Having looked at the record, it seems like there might have been some obstructive conduct with respect to count one. But maybe not. I don't know what I would say if I were a district court judge. Do you think if we don't like the government's arguments because they go to the other counts, I think we should just vacate that and send it back to the district court to say, look, you overruled this, but maybe there's something in there. You explained why. Make a fact finding. Tell us. I do, and here's why. It kind of lends itself to the discussion about whether it was a keen statement and what the difference it would make. I would note that based on the pre-sentence report, he's eligible for retroactive relief based on criminal history because he was assessed two additional points because he was on probation at the time. But under the new scheme of the guidelines, his criminal history points do not total seven or more, but six. So I'm not saying I know what the district court would or wouldn't do, but he's at least eligible to have those two levels taken off also. So if you take that into account, a four-level difference would make a significant difference in the sentence. And I think that makes the notion that the district court would give him the same sentence anyway even less. Well, couldn't we? I mean, couldn't this court? I mean, we could look in the record ourselves and determine that there is enough evidence in the record to support the enhancement, given that the district court said, I've considered everything. I've looked at everything. We could look ourselves and see if there's enough to support the enhancement. Can't we? I think I have to agree to that, yes. I think you can. All right. Thank you, counsel. Thank you.